**EXHIBIT C**

1   James M. Wood (State Bar No. 58679)
    Colleen T. Davies (State Bar No. 111371)
2   James M. Neudecker (State Bar No. 221657)
    REED SMITH LLP
3   1999 Harrison Street
    Oakland, CA 94612-3572
4
    **Mailing Address:**
5   P.O. Box 2084
    Oakland, CA 94604-2084
6
    Telephone:     510.763.2000
7   Facsimile:     510.273.8832

8   Attorneys for Defendant Eli Lilly and Company, a corporation

9           SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO

10

11  GLENN TEAGUE, et al.,                    Case No. CGC 07-462030

12              Plaintiffs,                  **DEFENDANT ELI LILLY AND
                                             COMPANY, A CORPORATION'S
13      vs.                                  ANSWER TO PLAINTIFFS' FIRST
                                             AMENDED COMPLAINT; DEMAND FOR
14  ELI LILLY AND COMPANY and               JURY TRIAL**
    MCKESSON CORPORATION,
15
16              Defendants.
                                             Complaint Filed:   April 4, 2007
17                                           Trial Date:        None Set

18

19          Defendant Eli Lilly and Company, a corporation ("Lilly"), hereby answers

20  plaintiffs' First Amended Complaint as filed in the Superior Court of California of and for the

21  County of San Francisco, Case No. CGC 07-462030 ("Complaint") by and through the

22  undersigned counsel.

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

ENDORSED
F I L E D
San Francisco County Superior Court

JUN 2 2 2007

GORDON PARK-LI, Clerk
BY: CAROLYN BALISTRERI
                Deputy Clerk

ENDORSED
F I L E D
San Francisco County Superior Court

JUN 2 2 2007

GORDON PARK-LI, Clerk
BY: CAROLYN BALISTRERI
                Deputy Clerk

- 1 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

# GENERAL DENIAL

Answering plaintiffs' Complaint, Lilly generally and specifically denies each and every allegation contained therein and further denies that, by reason of any act or omission by it or its agents, plaintiffs have been injured or damaged in any sum, or at all.

# PREAMBLE TO AFFIRMATIVE DEFENSES

Lilly reserves the right to rely upon any of the following or any additional defenses to each claim for relief asserted by plaintiffs to the extent that such defenses are supported by information developed through discovery or by evidence at trial.

# AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted against Lilly.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

Venue is improper in this county and judicial district.

## FOURTH AFFIRMATIVE DEFENSE

Some or all of plaintiffs' claims are barred by the learned intermediary and/or sophisticated user doctrines. At all relevant times herein, plaintiffs' prescribing physicians were in the position of learned intermediaries and/or sophisticated purchasers, fully knowledgeable and informed with respect to the risks and benefits of Zyprexa®.

- 2 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

**FIFTH AFFIRMATIVE DEFENSE**

The injuries, damages, and losses alleged in the Complaint, none being admitted, were caused in whole or in part by the negligence of plaintiffs and/or others, over whom Lilly exercised no control, had no opportunity to anticipate or right to control, and with whom Lilly had no legal relationship by which liability could be attributed to it because of the actions of plaintiffs and/or others, which, by comparison, were far greater than any conduct alleged as to Lilly.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs' alleged loss, damage, injury, harm, expense, diminution, or deprivation alleged, if any, was caused in whole or in part by plaintiffs' failure to exercise reasonable care and diligence to mitigate plaintiffs' alleged damages.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are preempted by federal law in that Zyprexa® was manufactured and labeled in a manner consistent with the state of the art at the pertinent time and approved by the Food and Drug Administration ("FDA").

**EIGHTH AFFIRMATIVE DEFENSE**

Some or all of plaintiffs' claims are barred by the doctrines concerning unavoidably unsafe products, including, but not limited to, the operation of comments j and k to Section 402A of the Restatement (Second) of Torts, and/or barred by the Restatement (Third) of Torts.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' breach of warranty claims are barred because there is no privity of contract between plaintiffs and Lilly; plaintiffs failed to give timely notice of any alleged breach of warranty to Lilly; plaintiffs did not reasonably rely upon any alleged warranty; plaintiffs failed

- 3 -

1   to satisfy all conditions precedent or subsequent to the enforcement of such warranty; and the

2   warranty was appropriately disclaimed, excluded, or modified.

3

4                        **TENTH AFFIRMATIVE DEFENSE**

5              Plaintiffs' claims are barred in whole or in part by the applicable provisions of the

6   United States Constitution, the Constitution of the State of California, and/or the applicable

7   Constitution of any other State or Commonwealth of the United States whose laws might be

8   deemed controlling in this case.  These provisions include, but are not limited to, the First

9   Amendment to the United States Constitution and/or Article I, Section 2 of the Constitution of the

10  State of California, because Lilly's commercial speech regarding Zyprexa® was neither false nor

11  misleading.

12

13                      **ELEVENTH AFFIRMATIVE DEFENSE**

14             Lilly alleges that plaintiffs were fully informed of the risks of the use of the

15  product made the subject of this action by their treating physicians, and the informed consent

16  given by plaintiffs is pleaded as an affirmative defense.

17

18                      **TWELFTH AFFIRMATIVE DEFENSE**

19             Lilly alleges that the State of California's judicially created definitions of design

20  defect and standards for determining whether there has been an actionable failure to warn are

21  unconstitutional in that, among other things, they are void for vagueness, impose an undue burden

22  upon interstate commerce, and constitute an impermissible effort to regulate in an area that has

23  previously been preempted by the federal government.

24

25                     **THIRTEENTH AFFIRMATIVE DEFENSE**

26             The provisions of California Civil Code §1431.2 are applicable to the Complaint

27  and each cause of action therein.

28

                                  - 4 -

_Defendant Eli Lilly And Company, A Corporation's Answer To Plaintiffs' Complaint; Demand For Jury Trial_

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

## FOURTEENTH AFFIRMATIVE DEFENSE

All products in any way connected with Lilly are defect-free, and such products fully comply with the products liability standard of California.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for strict products liability based upon design defect are barred by California law, which holds that a pharmaceutical manufacturer's liability for a defectively designed product shall not be measured by the standards of strict liability. *Brown v. Superior Court (Abbott Laboratories)*, 44 Cal.3d 1049, 1061 (1988); *see also Armstrong v. Optical Radiation Corp.*, 50 Cal.App.4th 580, 595 (1996); *Hufft v. Horowitz*, 4. Cal.App.4th 8, 13-17 (1992).

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claim for punitive or exemplary damages violates, and is it is therefore barred by, the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution on grounds including the following:

a.    It is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution to impose punitive damages, which are penal in nature, against a civil defendant upon the plaintiffs' satisfying a burden of proof that is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

b.    the procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing, which infringes upon the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution;

c.    the procedures pursuant to which punitive damages are awarded fail to

- 5 -

1    provide a reasonable limit on the amount of the award against defendant, which thereby violates

2    the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

3

4           d.      the procedures pursuant to which punitive damages are awarded fail to

5    provide specific standards for the amount of the award of punitive damages, which thereby

6    violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

7

8           e.      the procedures pursuant to which punitive damages are awarded result in

9    the imposition of different penalties for the same or similar acts, and thus violate the Equal

10   Protection Clause of the Fourteenth Amendment to the United States Constitution;

11

12          f.      the procedures pursuant to which punitive damages are awarded permit the

13   imposition of punitive damages in excess of the maximum criminal fine for the same or similar

14   conduct, which thereby infringes upon the Due Process Clause of the Fifth and Fourteenth

15   Amendments and the Equal Protection Clause of the Fourteenth Amendment to the United States

16   Constitution;

17

18          g.      the procedures pursuant to which punitive damages are awarded permit the

19   imposition of excessive fines in violation of the Eighth Amendment to the United States

20   Constitution;

21

22          h.      the award of punitive damages to plaintiffs in this action would constitute a

23   deprivation of property without due process of law; and

24

25          i.      the procedures pursuant to which punitive damages are awarded permit the

26   imposition of an excessive fine and penalty.

27

28

Defendant Eli Lilly And Company, A Corporation's Answer To Plaintiffs' Complaint; Demand For Jury Trial

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

## SEVENTEENTH AFFIRMATIVE DEFENSE

With respect to plaintiffs' demand for punitive or exemplary damages, Lilly specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damages awards including, but not limited to, those standards of limitation that arose in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and/or this Court should defer this matter, in whole or in part, pursuant to the doctrine of primary jurisdiction, in that the FDA is charged under the law with regulating prescription drugs, including Zyprexa®, and is specifically charged with determining the content of the warnings and labeling for prescription drugs. The granting of the relief prayed for in plaintiffs' Complaint would impede, impair, frustrate, or burden the effectiveness of such federal law and would violate the Supremacy Clause (Art. VI, cl. 2) of the United States Constitution.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent plaintiffs' claims are based on alleged misrepresentations made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

## TWENTIETH AFFIRMATIVE DEFENSE

The injuries or damages allegedly sustained by plaintiffs can be attributed to several causes and, accordingly, should be apportioned among the various causes according to respective contribution of each such cause to the harm sustained, if any. If any liability is found against Lilly, then said liability will constitute 50% or less of the total liability assigned to all persons liable, and, as such, the liability of Lilly to plaintiffs for non-economic loss shall be

- 7 -

1   limited, and shall not exceed Lilly's equitable share.

2

3                    **TWENTY-FIRST AFFIRMATIVE DEFENSE**

4          Any verdict or judgment rendered against Lilly must be reduced by those amounts

5   that have been, or will, with reasonable certainty, replace or indemnify plaintiffs, in whole or in

6   part, for any past or future claimed economic loss, from any collateral source such as insurance,

7   social security, worker's compensation or employee benefit programs.

8

9                    **TWENTY-SECOND AFFIRMATIVE DEFENSE**

10         Individuals or entities other than Lilly, and third persons not parties to this action,

11  were negligent or legally responsible or otherwise at fault for the damages alleged in plaintiffs'

12  Complaint. Lilly therefore requests that, in the event of a finding of any liability in favor of

13  plaintiffs or settlement or judgment against such individuals or any defendant other than Lilly, an

14  apportionment of fault be made among all parties and third persons by the Court or jury as

15  permitted by *Li v. Yellow Cab Co.*, 13 Cal. 3d 804 (1975) and *American Motorcycle Assn. v.*

16  *Superior Court of Los Angeles County*, 20 Cal. 3d 578 (1978). Lilly further requests a judgment

17  and declaration of complete or partial indemnification and contribution against all other parties or

18  persons in accordance with the apportionment of fault.

19

20                   **TWENTY-THIRD AFFIRMATIVE DEFENSE**

21         Plaintiffs' purported allegations of misrepresentation, fraud and concealment fail

22  to state a cause of action as a matter of law because, among other deficiencies, plaintiffs fail to

23  plead with specificity any false misrepresentation as to a material fact and/or reliance on the part

24  of plaintiffs upon any such material fact.

25

26                   **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

27         The Complaint improperly joins plaintiffs to the causes of action asserted against

28  Lilly because plaintiffs' right to relief, if any, does not arise out of the same transaction or series

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 8 -

1   of transactions, plaintiffs' claims do not involve common questions of fact or law, and plaintiffs

2   do not have a claim, right, or interest adverse to Eli Lilly and Company in the controversy that is

3   the subject of this action as required by Cal. Civ. Proc. Code § 378(a)(1).

4

5                    **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

6            To the extent plaintiffs seek restitution on behalf of individuals who used the

7   subject pharmaceutical product manufactured or distributed by answering defendant and suffered

8   no damage or loss as a result thereof, restitution is unavailable as nothing has been taken from

9   those individuals, who allegedly could have an equitable basis for restitution.

10

11                   **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

12           Plaintiffs' claims for restitution for products previously used are barred in whole

13  or in part because plaintiffs received benefits from the subject pharmaceutical product

14  manufactured or distributed by answering defendant and nothing was wrongfully taken from such

15  plaintiffs.

16  / / / / /

17  / / / / /

18  / / / / /

19  / / / / /

20  / / / / /

21  / / / / /

22  / / / / /

23  / / / / /

24  / / / / /

25  / / / / /

26  / / / / /

27  / / / / /

28  / / / / /

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

- 9 -

Defendant Eli Lilly And Company, A Corporation's Answer To Plaintiffs' Complaint; Demand For Jury Trial

1    THEREFORE, Lilly respectfully requests that this Court enter judgment in favor

2   of Eli Lilly and Company and against plaintiffs; dismiss plaintiffs' claims with prejudice; award

3   Lilly its costs, disbursements, and attorney's fees incurred in the defense of this action; and grant

4   Lilly such other relief as the Court may deem just and proper.

5

6                              **DEMAND FOR JURY TRIAL**

7          Defendant Lilly hereby demands a trial by jury as to all issues so triable.

8

9   DATED: ~~June 22, 2007~~                    REED SMITH LLP

10

11                                         By _____

12                                            James M. Wood
                                             Colleen T. Davies
13                                           James M. Neudecker
                                             Attorneys for Defendant
14                                           Eli Lilly and Company, a corporation

15

16

17   DOCSOAK-9876714.1

18

19

20

21

22

23

24

25

26

27

28
                                         - 10 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

## PROOF OF SERVICE

2         I am a resident of the State of California, over the age of eighteen years, and not a

3    party to the within action. My business address is REED SMITH LLP,

4    1999 Harrison Street, Suite 2400, Oakland, CA 94612-3572. On June 22, 2007, I served the

5    following document(s) by the method indicated below:

6

7    **DEFENDANT ELI LILLY AND COMPANY, A CORPORATION'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**

8    ☐    by transmitting via facsimile on this date from fax number +1 510 273 8832 the document(s)
9    listed above to the fax number(s) set forth below. The transmission was completed before
    5:00 PM and was reported complete and without error. The transmission report, which is
10   attached to this proof of service, was properly issued by the transmitting fax machine.
    Service by fax was made by agreement of the parties, confirmed in writing. The transmitting
11   fax machine complies with Cal.R.Ct 2003(3).

12   ☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully
    prepaid, in the United States mail at Oakland, California addressed as set forth below. I am
13   readily familiar with the firm's practice of collection and processing of correspondence for
    mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same
14   day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
    motion of the party served, service is presumed invalid if the postal cancellation date or
15   postage meter date is more than one day after the date of deposit for mailing in this
    Declaration.

16   ☐    by placing the document(s) listed above in a sealed envelope(s) and by causing personal
    delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof
17   of service by the process server or delivery service will be filed shortly.

18   ☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set
    forth below.

19

20   ☐    by placing the document(s) listed above in a sealed envelope(s) and consigning it to an
    express mail service for guaranteed delivery on the next business day following the date of
    consignment to the address(es) set forth below. A copy of the consignment slip is attached to
21   this proof of service.

22   ☐    by transmitting via email to the parties at the email addresses listed below:

23   David Andersen, Esq.                    Attorney for Plaintiffs
    THE MILLER FIRM
24   105 N. Alfred Street
    Alexandria, VA 22314
25   Telephone: 703.519.8080
    Facsimile: 703.519.8084

26

27

28

1          I declare under penalty of perjury under the laws of the State of California that the

2      above is true and correct.  Executed on June 22, 2007, at Oakland, California.

3
                                        *Gloria S. Sandoval*
4                                       Gloria S. Sandoval

5

6

7

8      DOCSOAK-9876985.1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**EXHIBIT D**

1  James M. Wood (State Bar No. 58679)
   Colleen T. Davies (State Bar No. 111371)
2  James M. Neudecker (State Bar No. 221657)
   REED SMITH LLP
3  1999 Harrison Street
   Oakland, CA 94612-3572
4
   **Mailing Address:**
5  P.O. Box 2084
   Oakland, CA 94604-2084
6
   Telephone:    510.763.2000
7  Facsimile:    510.273.8832

8  Attorneys for Defendant McKesson Corporation

9                SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO

10

11

12  GLENN TEAGUE, et al.,                         Case No. CGC 07-462030

13                  Plaintiffs,                    **DEFENDANT MCKESSON
                                                   CORPORATION'S ANSWER TO
14          vs.                                    PLAINTIFFS' COMPLAINT; DEMAND
                                                   FOR JURY TRIAL**
15  ELI LILLY AND COMPANY and
    MCKESSON CORPORATION,
16
                    Defendants.                    Complaint Filed:   April 4, 2007
17                                                 Trial Date:        None Set

18

19          Defendant McKesson Corporation ("McKesson"), hereby answers plaintiffs'

20  Complaint as filed in the Superior Court of California of and for the County of San Francisco,

21  Case No. CGC 07-462030 ("Complaint") by and through the undersigned counsel.

22

23

24

25

26

27

28

ENDORSED
**FILED**
San Francisco County Superior Court

JUN 2 2 2007

GORDON PARK-LI, Clerk
BY: _____ MARY ANN MORAN _____
                        Deputy Clerk

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1  
2  

## GENERAL DENIAL

3        Answering plaintiffs' Complaint, McKesson generally and specifically denies each

4  and every allegation contained therein and further denies that, by reason of any act or omission by

5  it or its agents, plaintiffs have been injured or damaged in any sum, or at all.

6  

## PREAMBLE TO AFFIRMATIVE DEFENSES

7  
8  

9        McKesson reserves the right to rely upon any of the following or any additional

10  defenses to each claim for relief asserted by plaintiffs to the extent that such defenses are

11  supported by information developed through discovery or by evidence at trial.

12  

## AFFIRMATIVE DEFENSES

13  
14  

## FIRST AFFIRMATIVE DEFENSE

15  

16        The Complaint fails to state a claim upon which relief can be granted against

17  McKesson.

18  

## SECOND AFFIRMATIVE DEFENSE

19  

20  Plaintiffs' claims are barred, in whole or in part, by the statute of limitations.

21  

## THIRD AFFIRMATIVE DEFENSE

22  

23  Venue is improper in this county and judicial district.

24  

## FOURTH AFFIRMATIVE DEFENSE

25  

26        Some or all of plaintiffs' claims are barred by the learned intermediary and/or

27  sophisticated user doctrines.  At all relevant times herein, plaintiffs' prescribing physicians were

28  in the position of learned intermediaries and/or sophisticated purchasers, fully knowledgeable and

- 2 -

1    informed with respect to the risks and benefits of Zyprexa®.

2

3                        **FIFTH AFFIRMATIVE DEFENSE**

4            The injuries, damages, and losses alleged in the Complaint, none being admitted,

5    were caused in whole or in part by the negligence of plaintiffs and/or others, over whom

6    McKesson exercised no control, had no opportunity to anticipate or right to control, and with

7    whom McKesson had no legal relationship by which liability could be attributed to it because of

8    the actions of plaintiffs and/or others, which, by comparison, were far greater than any conduct

9    alleged as to McKesson.

10

11                       **SIXTH AFFIRMATIVE DEFENSE**

12           Plaintiffs' alleged loss, damage, injury, harm, expense, diminution, or deprivation

13   alleged, if any, was caused in whole or in part by plaintiffs' failure to exercise reasonable care

14   and diligence to mitigate plaintiffs' alleged damages.

15

16                      **SEVENTH AFFIRMATIVE DEFENSE**

17           Plaintiffs' claims are preempted by federal law in that Zyprexa® was

18   manufactured and labeled in a manner consistent with the state of the art at the pertinent time and

19   approved by the Food and Drug Administration ("FDA").

20

21                      **EIGHTH AFFIRMATIVE DEFENSE**

22           Some or all of plaintiffs' claims are barred by the doctrines concerning

23   unavoidably unsafe products, including, but not limited to, the operation of comments j and k to

24   Section 402A of the Restatement (Second) of Torts, and/or barred by the Restatement (Third) of

25   Torts.

26

27                       **NINTH AFFIRMATIVE DEFENSE**

28           Plaintiffs' breach of warranty claims are barred because there is no privity of

                                        - 3 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1  contract between plaintiffs and McKesson; plaintiffs failed to give timely notice of any alleged

2  breach of warranty to McKesson; plaintiffs did not reasonably rely upon any alleged warranty;

3  plaintiffs failed to satisfy all conditions precedent or subsequent to the enforcement of such

4  warranty; and the warranty was appropriately disclaimed, excluded, or modified.

5

6                          **TENTH AFFIRMATIVE DEFENSE**

7        Plaintiffs' claims are barred in whole or in part by the applicable provisions of the

8  United States Constitution, the Constitution of the State of California, and/or the applicable

9  Constitution of any other State or Commonwealth of the United States whose laws might be

10  deemed controlling in this case.  These provisions include, but are not limited to, the First

11  Amendment to the United States Constitution and/or Article I, Section 2 of the Constitution of the

12  State of California, because McKesson's commercial speech regarding Zyprexa® was neither

13  false nor misleading.

14

15                       **ELEVENTH AFFIRMATIVE DEFENSE**

16        McKesson alleges that plaintiffs were fully informed of the risks of the use of the

17  product made the subject of this action by their treating physicians, and the informed consent

18  given by plaintiffs is pleaded as an affirmative defense.

19

20                        **TWELFTH AFFIRMATIVE DEFENSE**

21        McKesson alleges that the State of California's judicially created definitions of

22  design defect and standards for determining whether there has been an actionable failure to warn

23  are unconstitutional in that, among other things, they are void for vagueness, impose an undue

24  burden upon interstate commerce, and constitute an impermissible effort to regulate in an area

25  that has previously been preempted by the federal government.

26

27                      **THIRTEENTH AFFIRMATIVE DEFENSE**

28        The provisions of California Civil Code §1431.2 are applicable to the Complaint

- 4 -

1    and each cause of action therein.

2

3                    **FOURTEENTH AFFIRMATIVE DEFENSE**

4            All products in any way connected with McKesson are defect-free, and such

5    products fully comply with the products liability standard of California.

6

7                     **FIFTEENTH AFFIRMATIVE DEFENSE**

8            Plaintiffs' claims for strict products liability based upon design defect are barred

9    by California law, which holds that a pharmaceutical manufacturer's liability for a defectively

10   designed product shall not be measured by the standards of strict liability. *Brown v. Superior*

11   *Court (Abbott Laboratories)*, 44 Cal.3d 1049, 1061 (1988); *see also Armstrong v. Optical*

12   *Radiation Corp.*, 50 Cal.App.4th 580, 595 (1996); *Hufft v. Horowitz*, 4. Cal.App.4th 8, 13-17

13   (1992).

14

15                    **SIXTEENTH AFFIRMATIVE DEFENSE**

16           Plaintiffs' claim for punitive or exemplary damages violates, and is it is therefore

17   barred by, the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States

18   Constitution on grounds including the following:

19

20           a.       It is a violation of the Due Process and Equal Protection Clauses of the

21   Fourteenth Amendment to the United States Constitution to impose punitive damages, which are

22   penal in nature, against a civil defendant upon the plaintiffs' satisfying a burden of proof that is

23   less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

24

25           b.       the procedures pursuant to which punitive damages are awarded may result

26   in the award of joint and several judgments against multiple defendants for different alleged acts

27   of wrongdoing, which infringes upon the Due Process and Equal Protection Clauses of the

28   Fourteenth Amendment to the United States Constitution;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

- 5 -

1        c.    the procedures pursuant to which punitive damages are awarded fail to

2    provide a reasonable limit on the amount of the award against defendant, which thereby violates

3    the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

4

5        d.    the procedures pursuant to which punitive damages are awarded fail to

6    provide specific standards for the amount of the award of punitive damages, which thereby

7    violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

8

9        e.    the procedures pursuant to which punitive damages are awarded result in

10   the imposition of different penalties for the same or similar acts, and thus violate the Equal

11   Protection Clause of the Fourteenth Amendment to the United States Constitution;

12

13       f.    the procedures pursuant to which punitive damages are awarded permit the

14   imposition of punitive damages in excess of the maximum criminal fine for the same or similar

15   conduct, which thereby infringes upon the Due Process Clause of the Fifth and Fourteenth

16   Amendments and the Equal Protection Clause of the Fourteenth Amendment to the United States

17   Constitution;

18

19       g.    the procedures pursuant to which punitive damages are awarded permit the

20   imposition of excessive fines in violation of the Eighth Amendment to the United States

21   Constitution;

22

23       h.    the award of punitive damages to plaintiffs in this action would constitute a

24   deprivation of property without due process of law; and

25

26       i.    the procedures pursuant to which punitive damages are awarded permit the

27   imposition of an excessive fine and penalty.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

- 6 -

**SEVENTEENTH AFFIRMATIVE DEFENSE**

With respect to plaintiffs' demand for punitive or exemplary damages, McKesson specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damages awards including, but not limited to, those standards of limitation that arose in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred and/or this Court should defer this matter, in whole or in part, pursuant to the doctrine of primary jurisdiction, in that the FDA is charged under the law with regulating prescription drugs, including Zyprexa®, and is specifically charged with determining the content of the warnings and labeling for prescription drugs. The granting of the relief prayed for in plaintiffs' Complaint would impede, impair, frustrate, or burden the effectiveness of such federal law and would violate the Supremacy Clause (Art. VI, cl. 2) of the United States Constitution.

**NINETEENTH AFFIRMATIVE DEFENSE**

To the extent plaintiffs' claims are based on alleged misrepresentations made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

**TWENTIETH AFFIRMATIVE DEFENSE**

The injuries or damages allegedly sustained by plaintiffs can be attributed to several causes and, accordingly, should be apportioned among the various causes according to respective contribution of each such cause to the harm sustained, if any. If any liability is found against McKesson, then said liability will constitute 50% or less of the total liability assigned to all persons liable, and, as such, the liability of McKesson to plaintiffs for non-economic loss shall

- 7 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1   be limited, and shall not exceed McKesson's equitable share.

2

## TWENTY-FIRST AFFIRMATIVE DEFENSE

4   Any verdict or judgment rendered against McKesson must be reduced by those

5   amounts that have been, or will, with reasonable certainty, replace or indemnify plaintiffs, in

6   whole or in part, for any past or future claimed economic loss, from any collateral source such as

7   insurance, social security, worker's compensation or employee benefit programs.

8

## TWENTY-SECOND AFFIRMATIVE DEFENSE

10   Individuals or entities other than McKesson, and third persons not parties to this

11   action, were negligent or legally responsible or otherwise at fault for the damages alleged in

12   plaintiffs' Complaint. McKesson therefore requests that, in the event of a finding of any liability

13   in favor of plaintiffs or settlement or judgment against such individuals or any defendant other

14   than McKesson, an apportionment of fault be made among all parties and third persons by the

15   Court or jury as permitted by *Li v. Yellow Cab Co.*, 13 Cal. 3d 804 (1975) and *American*

16   *Motorcycle Assn. v. Superior Court of Los Angeles County*, 20 Cal. 3d 578 (1978). McKesson

17   further requests a judgment and declaration of complete or partial indemnification and

18   contribution against all other parties or persons in accordance with the apportionment of fault.

19

## TWENTY-THIRD AFFIRMATIVE DEFENSE

21   Plaintiffs' purported allegations of misrepresentation, fraud and concealment fail

22   to state a cause of action as a matter of law because, among other deficiencies, plaintiffs fail to

23   plead with specificity any false misrepresentation as to a material fact and/or reliance on the part

24   of plaintiffs upon any such material fact.

25

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

27   The Complaint improperly joins plaintiffs to the causes of action asserted against

28   McKesson because plaintiffs' right to relief, if any, does not arise out of the same transaction or

1   series of transactions, plaintiffs' claims do not involve common questions of fact or law, and

2   plaintiffs do not have a claim, right, or interest adverse to Eli McKesson and Company in the

3   controversy that is the subject of this action as required by Cal. Civ. Proc. Code § 378(a)(1).

4

5                        **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

6                To the extent plaintiffs seek restitution on behalf of individuals who used the

7   subject pharmaceutical product manufactured or distributed by answering defendant and suffered

8   no damage or loss as a result thereof, restitution is unavailable as nothing has been taken from

9   those individuals, who allegedly could have an equitable basis for restitution.

10

11                       **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

12               Plaintiffs' claims for restitution for products previously used are barred in whole

13  or in part because plaintiffs received benefits from the subject pharmaceutical product

14  manufactured or distributed by answering defendant and nothing was wrongfully taken from such

15  plaintiffs.

16

17                      **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

18               McKesson is a provider of services, not products, and thus is not strictly liable

19  under California law.

20

21                      **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

22               Plaintiffs failed to allege specific facts that McKesson distributed and/or supplied

23  the subject product that plaintiffs allegedly ingested.  Accordingly, plaintiffs failed to plead facts

24  sufficient to show an actual connection between McKesson's alleged conduct and plaintiffs'

25  purported injury and McKesson has, therefore, been fraudulently joined.

26

27

28

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware.*

- 9 -

Defendant McKesson Corporation's Answer To Plaintiffs' Complaint; Demand For Jury Trial

1    THEREFORE, McKesson respectfully requests that this Court enter judgment in

2   favor of Eli McKesson and Company and against plaintiffs; dismiss plaintiffs' claims with

3   prejudice; award McKesson its costs, disbursements, and attorney's fees incurred in the defense

4   of this action; and grant McKesson such other relief as the Court may deem just and proper.

5

6                              **DEMAND FOR JURY TRIAL**

7       Defendant McKesson hereby demands a trial by jury as to all issues so triable.

8

9   DATED:  *June 22, 2007*                    REED SMITH LLP

10

11                                          By  _James M. Wood_

12                                              James M. Wood
                                                Colleen T. Davies
13                                              James M. Neudecker
                                                Attorneys for Defendant
14                                              McKesson Corporation

15    DOCSOAK-9876954.1

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, 1999 Harrison Street, Suite 2400, Oakland, CA 94612-3572. On June 22, 2007, I served the following document(s) by the method indicated below:

## DEFENDANT MCKESSON CORPORATION'S ANSWER TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

☐ by transmitting via facsimile on this date from fax number +1 510 273 8832 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 PM and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct 2003(3).

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakland, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof of service by the process server or delivery service will be filed shortly.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below. A copy of the consignment slip is attached to this proof of service.

☐ by transmitting via email to the parties at the email addresses listed below:

David Andersen, Esq.                           Attorney for Plaintiffs
THE MILLER FIRM
105 N. Alfred Street
Alexandria, VA 22314
Telephone:  703.519.8080
Facsimile:  703.519.8084

1           I declare under penalty of perjury under the laws of the State of California that the

2    above is true and correct.  Executed on June 22, 2007, at Oakland, California.

3

4    _Gloria S. Sandoval_
    Gloria S. Sandoval

8    DOCSOAK-9876985.1

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 1 –
Proof of Service

**EXHIBIT E**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 4 2004

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

DOCKET NO. 1596

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE ZYPREXA PRODUCTS LIABILITY LITIGATION*

*BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, BRUCE M. SELYA,\* D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., AND KATHRYN H. VRATIL, JUDGES OF THE PANEL*

TRANSFER ORDER

This litigation currently consists of the six actions listed on the attached Schedule A and pending, respectively, in the Central District of California, the Eastern District of Kentucky, the Western District of Louisiana, the Middle District of North Carolina, the Northern District of Ohio, and the Eastern District of Tennessee.[1] Before the Panel is a motion, pursuant to 28 U.S.C. § 1407, brought by defendant Eli Lilly and Company (Lilly) for coordinated or consolidated proceedings of these actions under Section 1407 in the Southern District of Indiana or, in the alternative, the Northern District of Ohio. At oral argument, Lilly also suggested transfer to the Southern District of New York or the Eastern District of Pennsylvania. One individual defendant in the Eastern District of Tennessee action does not object to the motion. Plaintiffs in the potential tag-along actions in the Eastern District of New York and the Southern District of New York support transfer under Section 1407, but suggest the Eastern District of New York as transferee district. Plaintiffs in three actions and a physician defendant in the Eastern District of Tennessee action initially opposed the motion;[2] at oral argument, however, these parties supported the motion for transfer, but objected to the Southern District of Indiana as

---

\*  Judge Selya took no part in the decision of this matter.

[1]  In addition to the six actions before the Panel, the parties have identified two related actions pending in the Eastern District of New York and six related actions pending, respectively, in the Middle District of Alabama, the Eastern District of Arkansas, the Southern District of Iowa, the Southern District of Mississippi, the Southern District of New York, and the Eastern District of Tennessee. These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001). Defendant's motion also included a second action in the Eastern District of Kentucky, which was dismissed with prejudice by stipulation of the parties in January 2004, and an action in the Eastern District of Virginia, which was remanded to state court in March 2004. Accordingly the question of transfer under Section 1407 of those two actions is now moot.

[2]  Plaintiffs in the Eastern District of Kentucky, Middle District of North Carolina, and Northern District of Ohio actions initially opposed the motion.

**OFFICIAL FILE COPY**

**IMAGED** APR 15 '04

- 2 -

transferee district, with the plaintiffs in this group now supporting the Eastern District of New York as transferee district. Plaintiff in the Western District of Louisiana action and over twenty defendants in the Eastern District of Tennessee action oppose transfer of the actions in which they are parties.[3]

On the basis of the papers filed and hearing session held, the Panel finds that these six actions involve common questions of fact, and that centralization under Section 1407 in the Eastern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All actions share allegations concerning the safety of Zyprexa, a prescription drug used in the treatment of schizophrenia. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

Plaintiff in the Western District of Louisiana action argues against transfer of her action that her claims arise from the interaction between Zyprexa and another prescription medicine, and thus are different from the claims in other actions relating only to Zyprexa. This plaintiff also emphasizes that her decedent suffered respiratory failure, not the diabetes or related injuries complained of in other actions. We find these contentions unpersuasive. We observe that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer. Nor is the presence of an additional defendant or product significant when the underlying action still contains, as here, products liability claims and factual allegations focusing on the safety of Zyprexa.

The defendants opposing transfer of the Eastern District of Tennessee action argue that the claims against them in that action do not involve common questions of fact with the claims against Lilly in this or any other action. Specifically, these defendants argue that the assertions confronted by them, for alleged violations of constitutional rights among other things, do not share sufficient factual questions with the products liability claims against Lilly to warrant transfer. These defendants also emphasize that the claims against them have been pending for over three years, longer than the claims against Lilly have been pending in any action. In the event the Panel orders transfer of the Eastern District of Tennessee action, these defendants ask the Panel to separate and simultaneously remand the claims asserted against them in the action, thereby effectively denying transfer of those claims.

For these parties opposing transfer on the basis of insufficient common questions, distinctions among the actions may be such that certain actions or claims therein can be ready for remand in advance of other claims or actions, after further refinement of the issues and close scrutiny by the transferee judge. But we are unwilling, on the basis of the record before us, to make a determination at this time that the degree of interconnection between these claims and the claims against Lilly in the affected actions is so small as to warrant exclusion of the claims from Section 1407 proceedings from the outset. We point out that whenever the transferee judge deems remand of any claims or actions appropriate,

---

[3]    Opposing defendants are Roane County, Tennessee; Ken Yager; David Haggard; Fay Hall; Linda Mayes; John Mayes; Kelly Jackson; Cathy Goss; Thomas Pio; Sandra Miller; Stacee French; Lynda Carter; Stephen Halcomb; Deborah R. Gibson; Officer Rymer; Officer Rittenhouse; Officer Melton; Officer Belcher; Ambulance Service of Roane County; Gloria Wright; Howie Rose; and D. Tipton.

- 3 -

procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436-38. In the meantime, transfer under Section 1407 will offer the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands that duplicate activity that will occur or has already occurred in other actions. Discovery with respect to any case-specific issues can proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976). Section 1407 centralization will thus enable pretrial proceedings to be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

Defendants in the Eastern District of Tennessee action also suggest that a decision in their favor on pending motions for summary judgment may obviate the need for transfer of the action. We note, however, that such motions can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2nd Cir. 1990).

Given the geographic dispersal of current and anticipated constituent actions, no district stands out as the focal point for this wide-ranging litigation. In concluding that the Eastern District of New York is an appropriate forum for this docket, we note that centralization in this district permits the Panel to effect the Section 1407 assignment to an experienced transferee judge who can steer this litigation on a steady and expeditious course.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the attached Schedule A are transferred to the Eastern District of New York and, with the consent of that court, assigned to the Honorable Jack B. Weinstein for coordinated or consolidated pretrial proceedings.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

**EXHIBIT F**

```
___ FILED      ___ ENTERED
___ LODGED     ___ RECEIVED
```

**NOV 27 2002**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

_____

This document relates to:

Barnett, et al. v. American
Home Products Corp., et al.,
No. C02-423R

MDL NO. 1407

ORDER DENYING PLAINTIFF'S
MOTION TO REMAND

1    THIS MATTER comes before the court on the motion of plain-

2  tiffs to remand the case to state court in Mississippi.  Having

3  reviewed the papers filed in support of and in opposition to this

4  motion, the court rules as follows:

5                       I.  BACKGROUND

6       Plaintiffs purchased a variety of over-the-counter drugs

7  including, but not limited to, products sold under the trade

8  names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"

9  "BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."

10 All of these products contained the ingredient phenylpro-

11 panolamine ("PPA").  The individuals later consumed the medica-

12 tion and suffered unidentified types of injuries.  In June 2001,

13 plaintiffs filed an amended complaint in Mississippi state court

14 linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -

CV 02 00423  000000043

1     The complaint alleges numerous causes of action against both

2 manufacturers and distributors of PPA-containing products, as

3 well as several retail stores that sold those products.  One of

4 the stores named as a defendant, Bill's Dollar Stores, Inc.,

5 d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-

6 sippi corporation.  Two of the six total plaintiffs purchased

7 PPA-containing products from Bill's Dollar Store.[1]

8     Defendants removed the complaint to federal court alleging

9 that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-

10 tiffs moved to remand to state court.  The case was later trans-

11 ferred to this court as part of a multi-district litigation

12 ("MDL").

13                  II.  ANALYSIS

14     A plaintiff cannot defeat federal jurisdiction by fraudu-

15 lently joining a non-diverse party.  As an MDL court sitting in

16 the Ninth Circuit, this court applies the Ninth Circuit's fraudu-

17 lent joinder standard to the motion to remand.  See, e.g., In re

18 Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.

19 Pa. 2002); In re Bridgestone/Firestone, 204 F. Supp. 2d 1149,

20 1152 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care

21 Costs Litig., 100 F. Supp. 2d 31, 34 n.1 (D. D.C. 2000); In re

22

23    [1] Defendants assert the misjoinder of these plaintiffs'
claims and request that the court sever and deny remand as to the
24 four plaintiffs who did not purchase any products from Bill's
Dollar Store, or from any other Mississippi store.  However,
25 because, as discussed below, the court denies remand as to all
plaintiffs named in this action, the court need not address the
26 question of misjoinder at this time.

ORDER
Page - 2 -

1 | _Ford Motor Co. Bronco II Prods. Liab. Litig._, MDL-991, 1996 U.S.
2 | Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[2]  Under this
3 | standard, joinder of a non-diverse party is deemed fraudulent
4 | "'[i]f the plaintiff fails to state a cause of action against a
5 | resident defendant, and the failure is obvious according to the
6 | settled rules of the state.'"  _Morris v. Princess Cruises, Inc._,
7 | 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting _McCabe v. General_
8 | _Foods Corp._, 811 F.2d 1336, 1339 (9th Cir. 1987)).[3]

9 |      The propriety of removal to federal court is determined from
10 | the allegations in the complaint at the time of removal.  _See_
11 | _Ritchey v. Upjohn Drug Co._, 139 F.3d 1313, 1318 (9th Cir. 1998)
12 | However, in the case of fraudulent joinder, the defendant "'is
13 | entitled to present the facts showing the joinder to be fraudu-
14 | lent.'"  _Id._ (quoting _McCabe_, 811 F.2d at 1339).  _See also Morris_

15 | _____

16 |      [2] _See generally Menowitz v. Brown_, 991 F.2d 36, 40-41 (2d
    | Cir. 1993); _In Re Korean Airlines Disaster_, 829 F.2d 1171, 1174-
17 | 76 (D.C. Cir. 1987).

18 |      [3] However, as a practical matter, application of the Fifth
    | Circuit's fraudulent joinder standard would not alter the court's
19 | conclusion.  _See Badon v. RJR Nabisco, Inc._, 224 F.3d 382, 393
    | (5th Cir. 2000) (remand is denied where there is "no reasonable
20 | basis for predicting that plaintiffs might establish liability .
    | . . against the in-state defendants.")  For example, recent MDL
21 | courts utilized fraudulent joinder standards similar, and in one
    | case identical, to the Fifth Circuit's standard in deeming
22 | Mississippi pharmacies and their employees fraudulently joined
    | for reasons similar to those expressed in this opinion.  _See In_
23 | _re Diet Drugs Prods. Liab. Litig._, 220 F. Supp. 2d at 423-24
24 | (noting that there had been "a pattern of pharmacies being named
    | in complaints, but never pursued to judgment, typically being
25 | voluntarily dismissed at some point after the defendants' ability
    | to remove the case has expired"); _In re Rezulin Prods. Liab._
26 | _Litig._, 133 F. Supp. 2d 272, 279 & n.3, 288-92 (S.D.N.Y. 2001).

ORDER
Page - 3 -

1  236 F.3d at 1067-68 (citing <u>Cavallini v. State Farm Mut. Auto.</u>

2  <u>Ins. Co.</u>, 44 F.3d 256, 263 (5th Cir. 1995) for the proposition

3  that the court may "'pierc[e] the pleadings'" and consider

4  "summary judgment-type evidence.")

5      Defendants allege that plaintiffs fraudulently joined Bill's

6  Dollar Store, while plaintiffs claim the existence of legitimate

7  causes of action against Bill's Dollar Store, including products

8  liability, negligence, misrepresentation, and implied warranty

9  claims.  The parties also argue as to the relevance of a bank-

10 ruptcy petition filed by Bill's Dollar Store prior to the filing

11 of this suit.

12 A.  <u>Products Liability</u>

13     The complaint contains failure to warn and design defect

14 allegations pursuant to the Mississippi Products Liability Act.

15 Miss. Code Ann. § 11-1-63.  Under the Products Liability Act,

16 plaintiff must show that at the time the product left the control

17 of the manufacturer or seller, it was defective in failing to

18 contain adequate warnings or instructions, and/or was designed in

19 a defective manner.  Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).

20 Plaintiff must also show that the manufacturers and sellers knew,

21 or in light of reasonably available knowledge or the exercise of

22 reasonable care should have known, about the danger that caused

23 the alleged damage.  Miss. Code Ann. § 11-1-63 (c)(i),(f)(i).[4]

24 _____

25     [4] <u>See also</u> <u>Huff v. Shopsmith, Inc.</u>, 786 So.2d 383, 387 (Miss.
   2001)("With the adoption of 11-1-63, common law strict liability,
26 as laid out in <u>State Stove Mfg. Co. v. Hodges</u>, 189 So.2d 113

   ORDER
   Page - 4 -

1    Plaintiffs allege in the complaint that "defendants" or "all
2  defendants" knew or should have known of dangers associated with
3  PPA.  Moreover, plaintiffs specifically aver this knowledge or
4  reason to know on the part of the retailer defendants, including
5  Bill's Dollar Store.  However, the court finds that no factual
6  basis can be drawn from the complaint that Bill's Dollar Store
7  had knowledge or reason to know of any dangers allegedly associ-
8  ated with PPA.
9    First, the complaint utilizes the plural "defendants" in a
10 number of allegations that one could not reasonably interpret to
11 include Bill's Dollar Store.  See, e.g., Louis v. Wyeth-Averst
12 Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sep.
13 25, 2000) (finding products liability allegations lodged against
14 "defendants" conclusory where there was no factual support for
15 conclusion that Mississippi pharmacies had knowledge or reason to
16 know of alleged dangers associated with various diet drugs).[5]

17 _____

18 (Miss. 1966), is no longer the authority on the necessary
   elements of a products liability action.")
19
20 [5] See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.
   2d at 424 (finding complaints, including failure to warn,
21 negligence, breach of warranty, and strict liability claims,
   devoid of specific allegations against Mississippi pharmacies and
22 "filled instead with general statements levied against all
   defendants, which most properly can be read as stating claims
23 against drug manufacturers."); In re Rezulin Products Liab.
   Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case
24 where Mississippi pharmacies were lumped in with manufacturers
   and acts alleged, including failure to warn, breach of warranty,
25 and fraud, were attributed to "'defendants' generally", but
   never connected to the pharmacies); accord Badon, 224 F.3d at
26 391-93 ("While the amended complaint does often use the word

ORDER
Page - 5 -

1  For example, the complaint describes "defendants" as members of
2  the Non-Prescription Drug Manufacturers Association ("NDMA").
3  Through this association, "defendants" purportedly participated
4  in numerous discussions relating to the safety of PPA over the
5  past two decades, had representatives sit on the NDMA PPA Task
6  Force, and funded relevant studies.  In other words, plaintiffs,
7  in significant part, demonstrate "defendants'" knowledge as to
8  risks allegedly posed by PPA through activities engaged in by
9  manufacturer defendants alone.

10     Indeed, while "defendants" are alleged to have been aware or
11  to have had responsibility for awareness of numerous scientific
12  journal articles, incident reports, medical textbooks, and other
13  reports containing information as to risks of PPA consumption,
14  general medical practitioners are excluded from this awareness
15  and described as being not "fully informed."  The complaint
16  supplies no factual support for a conclusion that a dollar store
17  possessed medical and scientific knowledge beyond that possessed
18  by medical practitioners.

19     Second, the complaint specifically lays the responsibility
20  for allegedly concealing dangers posed by PPA on the manufacturer
21  defendants.  For example, the complaint alleges that the manufac-
22  turer defendants concealed material facts regarding PPA through
23  product packaging, labeling, advertising, promotional campaigns

24  _____

25  'defendants,' frequently it is evident that such usage could not
   be referring to the 'Tobacco Wholesalers.'"; finding conspiracy
26  allegations against Louisiana defendants entirely general).

ORDER
Page - 6 -

1  and materials, and other methods.  This allegation directly
2  undermines and contradicts the idea that Bill's Dollar Store had
3  knowledge or reason to know of alleged defects.  See, e.g.,
4  Louis, slip op. at 4-5 (finding complaint's "major theme" to
5  consist of the "manufacturers' intentional concealment of the
6  true risks of the drug(s), coupled with dissemination through
7  various media of false and misleading information of the safety
8  of the drug(s) at issue, [which belied] any suggestion of knowl-
9  edge, or reason to know by [the] resident defendants.") Cf. In re
10 Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.
11 2001) (finding Mississippi pharmacies facing failure to warn
12 claims fraudulently joined where "the theory underlying the
13 complaints [was] that the manufacturer defendants hid the dangers
14 of Rezulin from plaintiffs, the public, physicians, distributors
15 and pharmacists -- indeed from everyone.")

16      In sum, the court concludes that one could not reasonably
17 read the complaint to support the idea that the retailer defen-
18 dants had knowledge or reason to know of any dangers allegedly
19 associated with PPA.  Indeed, reading the complaint as a whole,
20 this allegation reveals itself as directed towards the manufac-
21 turer defendants alone.  As such, the court finds that plaintiffs
22 fail to state a products liability cause of action against Bill's
23 Dollar Store.[6]

24 _____

25      [6] The complaint once alludes to an "alternative" breach of
   express warranty claim under the Products Liability Act.  See
26 Miss. Code Ann. § 11-1-63 (a)(i)(4) (requiring a showing that the

ORDER
Page — 7 —

B.   Negligence and Misrepresentation

The complaint alleges negligence and misrepresentation by Bill's Dollar Store.  A negligence cause of action also requires a showing of knowledge or reason to know on the part of the seller.  See, e.g., R. Clinton Constr. Co. v. Bryant & Reaves, Inc., 442 F. Supp. 838, 851 (N.D. Miss. 1977) ("The rule is well settled that in order to fasten liability upon a party for negligence, it must be shown by a preponderance of the evidence that he knew or through the exercise of reasonable care should have known that his selection of a [product] would cause damage to his customer.")[7]  A misrepresentation cause of action requires

_____

seller breached an express warranty or failed to conform to other express factual representations upon which the claimant relied). However, the products liability allegations go on to touch solely upon failure to warn and design defect claims.  Because the complaint lacks any factual basis for support of a breach of express warranty claim against Bill's Dollar Store, the court also finds this bare allegation insufficient to support remand.

[7]Accord Louis, slip op. at 3-4 & n.3 ("[K]nowledge, or a reason to know, is also a necessary requisite for any claim of failure to warn or negligence that a plaintiff might undertake to assert extraneous to a claim under the Products Liability Act itself (assuming solely for the sake of argument that such a claim could exist)."); Cadillac Corp. v. Moore, 320 So.2d 361, 365 (Miss. 1975) (discussing negligence in "vendor/purchaser" context and stating that "fault on the part of a defendant so as to render him liable is to be found in action or nonaction, accompanied by knowledge, actual or implied, of the probable result of his conduct.")  Cf. Moore v. Memorial Hosp. of Gulfport, 825 So.2d 658, 664-66 (Miss. 2002) (extending "learned intermediary" doctrine to pharmacists in case involving prescription drug, and holding no actionable negligence claim could exist against a pharmacy unless a plaintiff indisputably informed the pharmacy of health problems which contraindicated the use of the drug in question, or the pharmacist filled

ORDER
Page - 8 -

1  a plaintiff to show:

2      (1) a representation; (2) its falsity; (3) its materi-
       ality; (4) the speaker's knowledge of its falsity or
3      ignorance of its truth; (5) the speaker's intent that
       the representation should be acted upon by the hearer
4      and in the manner reasonably contemplated; (6) the
       hearer's ignorance of its falsity; (7) the hearer's
5      reliance on its truth; (8) the hearer's right to rely
       thereon; and (9) the hearer's consequent and proximate
6      injury.

7  Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8  2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9  1996)).

10      Again, the court finds that the general and contradictory

11 allegations in the complaint do not support the existence of any

12 knowledge or reason to know on the part of Bill's Dollar Store to

13 support a negligence cause of action.  The court finds the

14 complaint similarly bereft of any factual support for the idea

15 that Bill's Dollar Store made any misrepresentations whatsoever

16 to plaintiffs regarding the PPA-containing products.  See, e.g.,

17 Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18 tiffs have no proof . . . that any of the named [Mississippi]

19 representatives made any representations directly to any of the

20 Plaintiffs.  Thus, none of the Plaintiffs was the 'hearer' of any

21 of the sales representatives' alleged misrepresentations.";

22 finding plaintiffs had no cause of action for misrepresentation).

23 Instead, as discussed above, the complaint attributes this

24

25 _____

26 prescriptions in quantities inconsistent with the recommended
   dosage guidelines).

ORDER
Page - 9 -

1  behavior to the manufacturing defendants alone.  As such, the

2  court also finds that plaintiffs fail to state negligence and

3  misrepresentation causes of action against Bill's Dollar Store.

4  C.    Implied Warranty

5        The complaint also alleges that Bill's Dollar Store breached

6  implied warranties of merchantability and fitness for particular

7  purpose.  See Miss. Code Ann. §§ 75-2-314, 315.  The complaint

8  accuses "defendants" of breaching the implied warranty of mer-

9  chantability in failing to adequately label containers and

10 packages containing PPA, and because the products sold failed to

11 conform to promises or affirmations of facts made on the contain-

12 ers or labels.  See Miss. Code Ann. § 75-2-314 (2)(e)-(f).  The

13 complaint accuses both manufacturers and sellers of breaching the

14 implied warranty of fitness for particular purpose where they had

15 reason to know of the particular use of the products, and the

16 purchasers relied on the sellers' skill or judgment in selecting

17 and furnishing suitable and safe products.  See Miss. Code Ann. §

18 75-2-315.

19       In order to recover for breach of implied warranty, a buyer

20 "must within a reasonable time after he discovers or should have

21 discovered any breach notify the seller of breach or be barred

22 from any remedy."  Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.

23 Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.

24 Miss. 1986); Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725,

25 730-31 (Miss. 1991).  Here, the complaint contains no indication

26 that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

1  to an alleged breach of warranty prior to the institution of this

2  lawsuit.

3      Additionally, with respect to the merchantability claim, the

4  complaint contains no factual support for a conclusion that

5  Bill's Dollar Store was in any way involved with the labeling

6  and/or packaging of the products at issue.  Instead, the com-

7  plaint alleges that the manufacturer defendants concealed mate-

8  rial facts regarding PPA through product packaging and labeling.

9      The court likewise finds plaintiffs' fitness for particular

10  purpose allegation insufficient.  "Mississippi does not recognize

11  an implied warranty of fitness for a particular purpose when the

12  good is purchased for the ordinary purpose of a good of that

13  kind."  Farris v. Coleman Co., 121 F. Supp. 2d 1014, 1018 (N.D.

14  Miss. 2000) (fitness for particular purpose claim failed where

15  plaintiff purchased cooler to keep food and beverages cold - the

16  ordinary purpose for which a cooler is used).  Here, plaintiffs

17  attested that they purchased PPA-containing products to remedy

18  their "cold, flu, sinus and/or allergy symptoms" - the ordinary

19  purpose of these medications.

20      Therefore, for the reasons stated above, the court finds

21  that plaintiffs fail to state implied warranty causes of action

22  against Bill's Dollar Store.

23  D.    Bankruptcy

24      Bill's Dollar Store filed a bankruptcy petition in February

25  2001, several months prior to the filing of plaintiffs' com-

26  plaint.  The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1    on judicial or other proceedings brought against Bill's Dollar

2    store that were or could have commenced prior to the commencement

3    of the bankruptcy proceeding.  See 11 U.S.C. § 362(a); In re

4    Cajun Elec. Power Co-Op. Inc., 185 F.3d 446, 457 (5th Cir. 1999).

5        Plaintiffs argue that the automatic stay poses no barrier to

6    relief given that they were unaware of the bankruptcy petition at

7    the time they filed their complaint, and because they anticipate

8    that the Bankruptcy Court will agree to their pending request to

9    lift the stay.  However, whether or not plaintiffs knew of the

10   petition and whether or not the stay may later be lifted, the

11   fact remains that, at the time plaintiffs filed their complaint,

12   the stay operated to prohibit their lawsuit.  As noted above, the

13   court determines jurisdiction based on the claims as stated at

14   the time of removal.  As such, the court finds the existence of

15   the stay at the time of filing serves as an additional reason to

16   deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d

17   at 1319-20 (denying remand where the statute of limitations had

18   expired at the time plaintiff filed the complaint).[8]

19                    III.   CONCLUSION

20       The court concludes that plaintiffs fail to state a cause of

21   action against the only non-diverse defendant, and that the

22   _____

23       [8]Unlike in a number of other cases transferred to this MDL,
     the defendants here did not supply the court with any summary
24   judgment-type evidence to establish the retailer defendant's
     fraudulent joinder.  However, the court nonetheless finds that a
25   plain reading of the complaint does not allow a conclusion that
     plaintiffs state a cause of action against Bill's Dollar Store.

26

ORDER
Page - 12 -

1  failure is obvious according to the settled rules of Mississippi.

2  As such, the court finds Bill's Dollar Store fraudulently joined

3  and DENIES plaintiff's motion to remand the case to the state

4  courts of Mississippi.

5      DATED at Seattle, Washington this 26th day of November,

6  2002.

7                              _____
                              BARBARA JACOBS ROTHSTEIN
8                              UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 13 -